**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JOHN DIGGS, #71488**                                                                                 **PLAINTIFF**

**VERSUS**                                                              **CIVIL ACTION NO.  1:02cv706-JMR**

**MIKE BARNHART and DONALD WEST**                                          **DEFENDANTS**

**MEMORANDUM OPINION**

      This cause came for trial before this Court on Tuesday, August 9,2005, with the Court acting as finder of fact.  Plaintiff, John Diggs ("Diggs"), alleges that Mike Barnhart ("Barnhart") and Donald West ("West") assaulted the petitioner in the warden's office of the Stone County Regional Correctional Facility ("SCRCF") on September 4, 2001.  Diggs contends that the aforementioned employees at SCRCF deprived him of his constitutional rights under the Eighth Amendment prohibition on cruel and unusual punishments, by using excessive force against him and by denying him medical attention on September 4, 2001.  The Court has jurisdiction over this action pursuant to title 42 U.S.C. § 1983.

      In his case-in-chief, the plaintiff presented testimony of Officer Jimmy Green, Sheila Fancher, and himself.  He did not introduce any exhibits.

      The defendants examined plaintiff's witnesses and introduced the testimony of Officer Jimmy Green, Sheila Fancher, Donald West, and Mike Barnhart.  As exhibits, the defendants introduced a Mississippi Department of Corrections incident report (See Exhibit D-1), a letter from the U.S. Department of Justice to Vann M. Barnhart dated February 25, 2003 (See Exhibit D-2), a letter from the sheriff of Stone County dated October 26, 2001 (See Exhibit D-3), and Rule Violation Reports concerning the plaintiff (See Exhibit D-4).

Upon consideration of the documentary and testimonial evidence presented to the Court at the trial of this matter, and upon consideration of the law applicable to this action, the Court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACTS**

On September 6, 2002, plaintiff initiated this Pro Se complaint pursuant to 42 U.S.C. § 1983 against defendants Mike Barnhart and Donald West. Plaintiff has alleged an incident wherein prison employees allegedly used excessive force depriving Diggs of his constitutional rights under the Eighth Amendment prohibition on cruel and unusual punishment. On September 4, 2001, Warden Mike Barnhart and Donald West allegedly beat him in the warden's office of the Stone County Regional Correctional Facility.

At the trial of this matter, plaintiff presented the testimony of Sheila Fancher ("Fancher"), a case worker at SCRCF. Fancher testified that on September 4, 2001, she entered the A-Dorm at SCRCF, where Diggs was housed at the time, to conduct interviews with the inmates located in that dormitory. While she was conducting one of her interviews, she noticed some movement on Diggs' bunk, which was situated approximately twenty (20) feet away from her. Fancher testified that she continued her interview until she heard her name called from the direction of Diggs' bunk. Upon hearing her named called, Fancher looked towards the bunk, at which time Diggs threw back the blanket that had previously been covering him to reveal that he was naked and masturbating. Fancher testified that she instructed another inmate to ask Diggs to stop and then she quickly finished her interview. Upon leaving the A-Dorm, Fancher immediately requested a Rule Violation Report ("RVR"), so she could formally report Diggs' behavior. At trial, Diggs did not contest these facts.

According to the trial testimony of defendant Warden Barnhart, at the time of this incident, SCRCF was a relatively new institution, and all RVR incidences were subject to the direct involvement of Warden Barnhart and his chief of security, defendant Donald West. When Warden Barnhart received notice of Diggs' RVR, he directed the attending officers to escort Diggs directly to his office. The plaintiff was handcuffed and escorted to Warden Barnhart's office by Officers Jimmy Green ("Green"), Ronnie Graham ("Graham"), and Lynn Johnson ("Johnson").[1]

Upon his arrival at the warden's office, the plaintiff's handcuffs were removed. According to Warden Barnhart's testimony, the plaintiff was not considered a threat due to the nature of his violation. Once the plaintiff entered Warden Barnhart's office, his escorting officers exited the room, leaving only Diggs, Warden Barnhart, Chief of Security Donald West, and Fancher. The plaintiff disputes the presence of Fancher, testifying that she did not enter the room until later; however, according the testimony of all of the other witnesses at trial, Fancher entered the warden's office directly behind Diggs. According to the testimony of Fancher and Warden Barnhart, they were both located behind the warden's desk, while defendant West remained behind Diggs. Warden Barnhart, then, proceeded to question the plaintiff as to why he committed the violation. At this point, the parties' respective versions of events differ drastically.

Diggs testified that upon questioning by Warden Barnhart about his RVR, the plaintiff denied his questionable behavior, and Warden Barnhart and West began striking him. The plaintiff testified that this caused him to start crying, as he felt provoked and helpless. He claimed that he asked the

---

[1]The Court notes that Officer Green appeared and testified at trial. Officer Graham was unable to appear as he is on active duty in Iraq. Officer Johnson did not appear. Apparently, the correct Officer Johnson was not identified and therefore did not appear.

defendants and Fancher to pray for him because he had a problem.  He testified that he must have been hit at least forty (40) times on that occasion.

Contrary to the plaintiff's testimony, each of the defendants and Fancher testified that once the plaintiff was in the room, he initially denied the incident, which prompted Fancher to ask Diggs to tell the truth.  He then claimed that this type of conduct was allowed at the South Mississippi Correctional Facility without repercussion; therefore, he thought it was allowed at SCRCF.  Warden Barnhart, then, asked the plaintiff if he had a wife, a mother, or a sister, and how he would feel if Warden Barnhart committed this act in front of one of them.  At this point, the plaintiff began to cry.  The plaintiff apologized to Fancher, stated that he had a "problem," and asked Warden Barnhart to pray for him.  Each of the defendants and Fancher testified that the plaintiff was never hit.  While Officer Green was not present in the room, he offered some corroboration by testifying that he heard Warden Barnhart ask the plaintiff about his mother, his sister, or his wife.  Officer Green further testified that when the plaintiff emerged from Warden Barnhart's office, his eyes were swollen in a way that is consistent with crying and that he did not appear to have been hit.

Following the plaintiff's trip to Warden Barnhart's office, he was placed in administrative protective custody.  Plaintiff claims that his placement in protective custody was the defendants' effort to cover up his beating.  In contrast to his assertion, Warden Barnhart and Fancher both testified that they received notice that the inmates in A-Dorm were upset by the plaintiff's actions towards Fancher and that some type of retaliation was in the works, by more that one contingent of the inmate population.  Warden Barnhart and Fancher testified that the plaintiff was placed in administrative protective custody due to the apparent threat to his safety.

Officer Green testified that he checked on Diggs several times that night while he was in protective custody. The plaintiff testified that he requested and the nurse gave him several ibuprofen pills the next day.

## CONCLUSIONS OF LAW

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, § 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F.2d 680,683 (5th Cir. 1981). To state a cause of action under § 1983, plaintiff must prove that the defendants acted under the color of state law and deprived the plaintiff of rights secured by the Constitution and federal statutes. *Karmi-Panahi v. Los Angeles Police Department*, 839 F.2d 621 (9th Cir. 1988). Plaintiff cannot succeed merely by showing a deprivation of his rights in a § 1983 action. § 1983 was intended only to protect federal rights protected by federal law. *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

In *Hudson v. McMillian*, 117 L. Ed. 2d 156 (1992), the United States Supreme Court held pertaining to prison officers accused of using excessive force in violation of the Eighth Amendment that the core judicial inquiry was whether the force was applied in a good faith effort to maintain discipline or to maliciously cause harm. It is well settled that unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. The seriousness of the injury is relevant in assessing whether the degree of force used was wanton and unnecessary. *Flowers v. Phelps*, 956 F. 2d 488 (5th Cir. 1992).

The Fifth Circuit in *Hudson*, on remand from the Supreme Court, stated that the factors to be considered include: "1. the extent of the injury suffered; 2. the need for the application of force;

3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson,* 962 F.2d at 523. In order "to succeed on an excessive force claim, the plaintiff bears the burden of showing: '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Goodson v. City of Chorpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). With regard to the physical injury requirement, the Fifth Circuit has found that "the law in this Circuit is that to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimus physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

In the pending matter, the plaintiff did not provide evidence of excessive force used on him during the time he was in the warden's office. Plaintiff's testimony was the only evidence presented that alleged a beating. All of the other witnesses who provided testimony contradicted the version of events presented by the plaintiff. The Court finds the testimony of Sheila Fancher more credible as to what actually occurred regarding this incident. Fancher's testimony corroborated the defendants' claims that they did not beat the plaintiff. Under the law applicable to 42 U.S.C. § 1982 civil actions, plaintiff has failed to sustain his allegations of excessive force by a preponderance of the evidence.

The appropriate inquiry when an inmate alleges that prison officials failed to attend to medical needs is whether the officials exhibited deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle* the Supreme Court decreed that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the

Eighth Amendment." *Id*. at 104 (citation omitted). Following *Estelle*, the Fifth Circuit has ruled that "deliberate indifference is a legal conclusion which must rest on facts evincing wanton actions on the part of the defendant." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *Walker v. Butler*, 967 F.2d 176, 177 (5th Cir. 1992).

The proof adduced at trial demonstrates no allegations of denial of medical attention. Consequently, this Court is of the opinion that the plaintiff has failed to demonstrate that he suffered deliberate indifference to his serious medical needs during that brief period.

The plaintiff alleges that he was subjected to excessive force when defendants Barnhart and West hit the plaintiff at least forty (40) times in the head. This Court is of the opinion that the plaintiff has failed to carry his burden of proving, by a preponderance of the evidence, that defendants Barnhart and West violated his constitutional rights. The plaintiff provided no evidence and offered no witnesses to corroborate his version of events.[2]

## CONCLUSION

For the foregoing reasons, this Court is of the opinion that the plaintiff has failed to carry the burden of demonstrating that he was cruelly and unusually punished by the named defendants and he was not afforded reasonable medical care by the named defendants. It is therefore the determination of this Court that in this action the defendants have not caused any constitutional deprivation to befall the plaintiff. A Final Judgment in accord with this Opinion shall be entered this date.

---

[2]The Court notes that the Plaintiff complained at trial of the absence of his witnesses. However, this Court fully explained to the Plaintiff at the Pretrial Conference on July 26, 2005, that it was the Plaintiff's responsibility to procure the presence at trial of his non-inmate witnesses.

SO ORDERED AND ADJUDGED, This the 23rd day of August, 2005.

                                        s/John M. Roper Sr.
                                        CHIEF UNITED STATES MAGISTRATE JUDGE